935 F.2d 281
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Otto L. JAHN, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 90-3498.
 United States Court of Appeals, Federal Circuit.
 May 30, 1991.
 
 Before ARCHER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 DECISION
 FRIEDMAN, Senior Circuit Judge.
 
 
 1
 The decision of the Merit Systems Protection Board (Board), Jahn v. Department of Agriculture, 45 M.S.P.R. 514 (1990), sustaining the Department of Agriculture's removal of the petitioner, is affirmed.
 
 OPINION
 
 2
 * In January 1987, the petitioner, Dr. Jahn, was the GS-12 curator of the germplasm repository of the Agricultural Research Service (Service) at Corvallis, Oregon. In that month, he was reassigned as curator of the germplasm repository of the National Arboretum in Washington, D.C. His work at Corvallis was with fruit; his new position would require him to work with woody plants. Dr. Jahn failed to report to his new assignment and the Service removed him.
 
 
 3
 After a hearing, the Board upheld Dr. Jahn's removal. This court vacated the Board's decision, holding that the Board's administrative judge improperly had excluded expert testimony Jahn offered to support his contention that his reassignment was not a proper management action, but instead was a pretext leading to his removal. After an additional hearing, the Board again sustained the removal. Jahn v. Department of Agriculture, 45 M.S.P.R. 514 (1990).
 
 II
 
 4
 A. Dr. Jahn first contends that his reassignment violated an agency regulation, promulgated pursuant to 5 U.S.C. Sec. 4302(b)(6) (1988), requiring that before an employee is reassigned for unacceptable performance, the employee be given formal notice of his deficiency and the opportunity to correct it. He relies upon Section K2 of the Service's Directive 418.3, dealing with its performance appraisal system, which states:
 
 
 5
 Unacceptable Performance.
 
 
 6
 The supervisor shall inform an employee in writing if performance on a critical element is unacceptable as soon as that fact becomes apparent. Managers and supervisors must provide the employee reasonable time to demonstrate fully successful performance and must offer reasonable assistance. If performance continues at the unacceptable level, management must reduce in grade, remove, or reassign the employee.
 
 
 7
 The Board held that Dr. Jahn's performance was not "unacceptable," and Dr. Jahn challenges the evidentiary support for that conclusion. We deem it unnecessary to decide that question, however, since we agree with the Board that Section K2 of Directive 418.3 does not cover this case. The Board explained:
 
 
 8
 Directive 418.3 is applicable only to those situations where the agency takes an action against an employee--be it removal, demotion, or reassignment--based on that employee's unacceptable performance. There is nothing in the regulation that would prohibit the reassignment of an employee that is not based on performance.
 
 
 9
 Jahn, 45 M.S.P.R. at 520 (emphasis in original).
 
 
 10
 As we discuss in Part II.B., below, the Board justifiably concluded that Dr. Jahn's reassignment was based not on his unsatisfactory performance but, as the Board stated, "to make better and more efficient use of his job 'strengths' in a new position." Id. The regulation, therefore, did not apply and the Service was not obligated to comply with its requirements before transferring Dr. Jahn.
 
 
 11
 B. Dr. Jahn next contends that his reassignment was not justified by legitimate managerial considerations, but instead was designed to effect his removal because of dissatisfaction with his work. He asserts that the Service knew he would not accept the reassignment. He argues that his work at Corvallis with fruit germplasm did not qualify him to perform the work at the National Arboretum, which involved woody plant germplasm. Dr. Jahn presented two expert witnesses, both professors of horticulture, who indicated their belief that he was not well qualified for his new assignment.
 
 
 12
 Dr. Jahn did not initially object to his reassignment on this ground. In his response to the notice of reassignment, he stated that he was "interested in the position," but referred to his medical problems (see Part II.C. below).
 
 
 13
 In its notice of reassignment to Dr. Jahn, the Service stated that it was taking the action "[b]ased on program needs, and to take full advantage of your expertise." In the second decision in this case, the administrative judge found that this "characterization of the reasons for the reassignment" was "reasonable." Jahn v. Department of Agriculture, No. DC07528710340-1, Initial Decision at 8 (M.S.P.B. Aug. 14, 1989). The administrative judge also reviewed and evaluated the conflicting evidence regarding the reasons for Dr. Jahn's reassignment, and concluded that the Service's decision to reassign Dr. Jahn "was based upon legitimate management considerations." Id. at 12.
 
 
 14
 The idea to reassign Dr. Jahn to the National Arboretum--a newly created position--originated with a Dr. Brooks in Washington, D.C., who had known Dr. Jahn "for many years." Dr. Brooks knew "of his professional training, background, experience, interests and I felt that he was extremely well qualified for that position at the National Arboretum...." Dr. Brooks "understood" that Dr. Jahn "wasn't particularly happy in his assignment [at Corvallis] or the Agency wasn't particularly happy with his job fit" and he thought that Dr. Jahn would be "better suited or have a better fit for the job at the National Arboretum."
 
 
 15
 The reassignment of Dr. Jahn was made by Dr. Knipling, the Associate Deputy Administrator of the Service. Dr. Knipling, who did not know Dr. Jahn personally, relied upon the recommendation of Dr. Brooks.
 
 
 16
 Particularly in light of this testimony, we cannot say that the Board's finding that the reassignment of Dr. Jahn reflected legitimate managerial considerations is not supported by substantial evidence.
 
 
 17
 C. Finally, Dr. Jahn contends that his health problems precluded him from accepting the reassignment. Dr. Jahn had heart problems, and had a pacemaker installed in June 1986.
 
 
 18
 In response to the notice of reassignment, Dr. Jahn stated that he did not think he was "qualified because of medical (heart) reasons." The Service requested him to "clarify the reason for your comment concerning your lack of qualifications based on health reasons." The Service stated that if "valid medical reasons are presented, we are willing to consider making reasonable modifications to your new position."
 
 
 19
 In response, Dr. Jahn stated that he had "2 heart problems," had received a pacemaker and was "also under medication to prevent an excessively rapid heart beat. These treatments, plus potential side effects of the medication put limits on the intensity of physical activity that is possible." Dr. Jahn enclosed a letter from his cardiologist, who stated that he had "reviewed the job requirements for the position of Horticulturist[,] GS-437-12, and I would recommend that you not apply for this position as the physical requirements appear to me to be excessive in view of your heart problems."
 
 
 20
 The Service then changed the job description of the new position to reduce significantly its "physical demands." The old description had stated: "The work requires long periods of walking, bending, standing or climbing associated with agricultural operations; and recurring lifting of moderately heavy items such as fertilizer, soil mixtures, etc." The new description was: "Curator work may require walking and/or standing, 1-2 hours per day, and may occasionally require lifting such items as bags of seedings or similar objects which may weigh from 5 to 20 pounds." This change was particularly significant in view of Dr. Jahn's cardiologist's statement that the "physical requirements" of the old position description "appear ... excessive in view of your heart problems" and confirm the Service's express willingness to make "reasonable modifications" in the new position to reflect Dr. Jahn's medical problems.
 
 
 21
 We agree with the Board that Dr. Jahn did not establish, in his responses to the proposed reassignment, that his medical condition precluded him from accepting the new post.